T.C. Memo. 2021-42

UNITED STATES TAX COURT

ANDREW MITCHELL BERRY AND SARA BERRY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RONALD GENE BERRY AND LINDA KATHRYN BERRY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 18196-16, 18635-16.          Filed April 7, 2021.

Andrew Mitchell Berry and Sara Berry, pro sese in docket No. 18196-16.

Ronald Gene Berry and Linda Kathryn Berry, pro sese in docket No.

18635-16.

Kris H. An and Jordan S. Musen, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  In these consolidated cases respondent determined

deficiencies in petitioners' Federal income tax and accuracy-related penalties

[*2] under section 6662(a)[1] for their 2013 taxable years. Respondent determined a deficiency of $257,627 for Andrew Mitchell Berry and Sara Berry (Andrew and Sara) and a deficiency of $229,757 for Ronald Gene Berry and Linda Kathryn Berry (Ronald and Linda) (collectively, petitioners). Respondent determined section 6662(a) accuracy-related penalties of $51,525 for Andrew and Sara and $46,071 for Ronald and Linda.

After concessions by all parties, the issues for decision are: (1) whether petitioners' S corporation, Phoenix Construction & Remodeling, Inc. (Phoenix), underreported its gross receipts by $183,202;[2] (2) whether Phoenix is entitled to deduct expenses of $121,903 related to car racing activities; (3) whether Phoenix is entitled to deduct rent expenses of $9,072; (4) whether Phoenix is entitled to deduct car and truck expenses of $19,054; (5) whether Ronald and Linda are entitled to deductions claimed on their 2013 Schedule C, Profit or Loss From Business; and (6) whether petitioners are liable for accuracy-related penalties under section 6662(a).

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[2]Respondent determined that Phoenix underreported its gross receipts by $353,146, but petitioners dispute only $183,202 of the adjustment.

[*3]                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated facts and facts drawn from the stipulated exhibits are incorporated herein by this reference.  Petitioners resided in California when they petitioned this Court.

In 2013 Ronald and his son, Andrew, owned and operated Phoenix.  Phoenix built houses and developed real estate.  It used the cash method of accounting and maintained its records using QuickBooks software.

Phoenix retained H&R Block to prepare its 2013 Form 1120S, U.S. Income Tax Return for an S Corporation.  Phoenix reported gross receipts of $1,126,439 and net income of $36,983 for 2013.  On their 2013 Form 1040, U.S. Individual Income Tax Return, Ronald and Linda claimed 50% of Phoenix' passthrough profits and losses on their Schedule E, Supplemental Income and Loss.  Andrew and Sara claimed the other 50%.

I.    Phoenix' Unreported Gross Receipts

In 2013 Phoenix bid on a project to redevelop an old nursery into condominiums (13th Street Project).  Andrew presented the 13th Street Project to Marcia Beckman, who was one of Phoenix' principal clients.  Ms. Beckman subsequently purchased the property on Andrew's advice and paid Phoenix to work on the 13th Street Project.

**[*4]**   On August 13, 2013, Ms. Beckman, through her entity Elite Enterprises Vegas, LLC (Elite), issued a $250,000 check to Phoenix.  The check included a notation on the memo line that read "Start-up 13th Street".  Phoenix deposited the check into a newly opened Wells Fargo bank account (3396 account) on August 26, 2013.  The 3396 account was opened under Phoenix' name, and Ronald and Andrew were the only individuals with signature authority on the account. Phoenix did not execute any contract with Ms. Beckman or Elite relating to the 13th Street Project or the 3396 account.  Phoenix did not include the $250,000 payment from Elite in its gross receipts for 2013.

Phoenix did preliminary work on the 13th Street Project and drew from the 3396 account to pay subcontractors it hired.  In addition to paying construction expenses Phoenix also drew from the 3396 account to pay car racing expenses, rent expenses, and miscellaneous personal expenses.[3]

II.    Phoenix' Racing Activity

Andrew has enjoyed restoring and racing cars since he was a teenager. Andrew restored his first race car with his father, Ronald, and began racing it when he was 16 years old.  In 2013 Phoenix purchased a race car body and chassis

---

[3]After trial, petitioners conceded Phoenix paid itself $66,798 from the 3396 account, which it did not include in its gross receipts for 2013.

**[*5]** modeled after a 1968 Chevrolet Camaro (68 Camaro) for Andrew to restore and race.  Phoenix also purchased car parts in 2013, including an engine, for Andrew to use in the 68 Camaro.  Phoenix claimed deductions totaling $121,903 for the car racing expenses.

Andrew finished restoring the 68 Camaro and began racing it in 2014.  All of Andrew's racing activities were conducted under the name "Berry Racing".  Phoenix did not report the car racing expenses as advertising expenses on its 2013 return, and the only photograph of the 68 Camaro in the record does not show any Phoenix branding or advertising on the car.

III.  Phoenix' Rent Expenses

In 2013 Phoenix rented a warehouse in Atascadero, California.  Phoenix issued six checks from its general business bank account with notations that read "rent", "shop rent", or "shop" and one check from the 3396 account with a notation that reads "shop rental".  These seven checks total $8,250.

IV.  Phoenix' Car and Truck Expenses

In 2013 Ronald and Andrew each owned pickup trucks, which they used to commute to and from Phoenix' jobsites.  They also used their trucks to drive to and from construction supply stores to pick up materials for Phoenix.  Neither maintained a contemporaneous record of the business use of his vehicle in 2013.

[*6] Phoenix retained some receipts for vehicle maintenance and repairs but none for gasoline purchases. Phoenix' QuickBooks entries document the amounts, dates, and vendors for several items reported as car and truck expenses, but it is unclear when, how, and by whom the entries were made. Phoenix' bank statements show the amounts, dates, and vendors for purchases of all types.

In addition to purchasing gasoline for Ronald's and Andrew's pickup trucks, Phoenix also purchased gasoline for the construction equipment it used on its jobsites in 2013. Phoenix' QuickBooks entries list some purchases and rentals of construction equipment. However, petitioners have not provided any records specifying the amounts or types of equipment Phoenix owned or used in 2013. Phoenix' bank statements and QuickBooks entries document many fuel purchases made in 2013, but they do not identify the vehicle for which each purchase was made.

V.    Ronald and Linda's Schedule C Expenses

On their 2013 Schedule C, Ronald and Linda reported $12,000 of gross income and claimed deductions of $11,076 in connection with construction services Ronald rendered to Phoenix. Ronald listed his occupation as construction, and Linda listed hers as homemaker. Phoenix paid the income to Ronald and characterized it as officer compensation.

**[\*7]**   The expenses at issue fall into three categories:  (1) telephone expenses, (2) business use of home expenses, and (3) car and truck expenses.  To support the reported telephone expenses, Ronald and Linda provided Verizon Wireless "quick bill summaries" for an account under Linda's name.  Both Ronald and Linda had cell phones on the account.  Ronald and Linda deducted the full amounts shown on the bill summaries and did not allocate costs between business and personal use.  To support the reported business use of home expenses, Ronald and Linda provided their 2013 household bills for gas, electricity, water, waste management, and cable.  To support the reported car and truck expenses, Ronald and Linda provided receipts for gasoline purchases and repairs made to their vehicles.  Ronald and Linda did not keep a logbook recording the business use of their vehicles in 2013.

VI.   <u>Notices of Deficiency and Section 6662(a) Accuracy-Related Penalties</u>

Respondent assigned Revenue Agent Gerardo Chavez (RA Chavez) to audit petitioners' and Phoenix' 2013 tax returns.  As part of the audit RA Chavez issued information document requests to petitioners requesting their accounting records for 2013, but petitioners did not respond.  RA Chavez completed his audit without receiving any additional information from petitioners, and on April 11, 2016, respondent issued Letters 950 (30-day letters) and Forms 4549-A, Income Tax

[*8] Examination Changes, also known as revenue agent reports (RARs), to petitioners with proposed adjustments to tax and accuracy-related penalties. Petitioners did not respond to the 30-day letters or RARs. The parties stipulated that, on May 6, 2016, RA Chavez' supervisor, Michael L. Krovious, approved the penalties determined against petitioners by signing Forms 300, Civil Penalty Approval Form (civil penalty approval forms).

Respondent issued statutory notices of deficiency to petitioners on May 25, 2016. Andrew and Sara timely petitioned this Court on August 18, 2016. Ronald and Linda timely petitioned this Court on August 23, 2016. On August 3, 2018, we granted respondent's motion to consolidate petitioners' cases. In October 2018 petitioners provided respondent with Phoenix' accounting records, and, as a result, respondent made several concessions with respect to previously disallowed deductions. We held the trial in petitioners' cases on July 22, 2019.

OPINION

I.    Burden of Proof

Generally, the Commissioner's determination in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving the determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In deciding whether a taxpayer has met his evidentiary burden, we are not required to

[*9] accept as true the uncontroverted self-serving testimony of interested

witnesses. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), aff'g 41

T.C. 593 (1964).

In the U.S. Court of Appeals for the Ninth Circuit, the court to which appeal

in these cases would lie absent a stipulation to the contrary,[4] the presumption of

correctness attaches to the Commissioner's determination of unreported income

when the Commissioner introduces a minimum evidentiary foundation to show

that the taxpayer received unreported income. Hardy v. Commissioner, 181 F.3d

1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97. If the Commissioner

supports his determination with a minimal evidentiary foundation, the taxpayer

bears the burden of showing by a preponderance of credible evidence that the

determination is arbitrary or erroneous. Id.; Palmer v. IRS, 116 F.3d 1309, 1312

(9th Cir. 1997). Bank deposits are prima facie evidence of the receipt of income.

Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The parties have stipulated that

Phoenix received a check for $250,000 from Elite in 2013, which petitioners

deposited in an account over which only Ronald and Andrew had signature

---

[4]Unless the parties otherwise agree in writing, Tax Court decisions are appealable to the Court of Appeals for the circuit in which the taxpayers resided when they filed their petitions. Sec. 7482(b).

[*10] authority. This evidence provides the requisite minimal evidentiary foundation to entitle respondent's determination to the presumption of correctness.

Petitioners argue that section 7491(a) shifts the burden of proof to respondent with respect to Phoenix' unreported income. Section 7491(a)(1) provides that if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining his liability and satisfies the requirements of section 7491(a)(2), the burden of proof shifts to the Commissioner with respect to that issue. Section 7491(a)(2) provides that the taxpayer must comply with all recordkeeping and substantiation requirements and cooperate with reasonable requests by the Commissioner for information, documents, witnesses, meetings, and interviews. Because petitioners failed to respond to reasonable requests by respondent for information and documents, they do not satisfy the section 7491(a)(2) requirements. We hold that the burden of proof remains with petitioners.

II.    Phoenix' Unreported Gross Receipts

Respondent determined that Phoenix had unreported gross receipts of $353,146 for 2013, but petitioners challenge only $183,202 of the $250,000

[*11] Phoenix received from Elite and deposited in the 3396 account.[5]  Petitioners argue that this amount is not income to Phoenix because the 3396 account was a trust account established and maintained for the benefit of Ms. Beckman.

Gross income includes income from all sources unless specifically exempted or excluded.  Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955).  Funds that a taxpayer holds in trust, which the taxpayer is obliged to spend entirely for a specified purpose with no profit, gain, or other benefit to himself, are not includible in gross income.  Ford Dealers Advert. Fund, Inc. v. Commissioner, 55 T.C. 761, 771 (1971), aff'd, 456 F.2d 255 (5th Cir. 1972); see also Angelus Funeral Home v. Commissioner, 47 T.C. 391 (1967), aff'd, 407 F.2d 210 (9th Cir. 1969).  If a purported trustee has the right to use the funds for his own benefit--even if that right is limited--no trust exists, and the funds are includible in gross income.  Angelus Funeral Home v. Commissioner, 47 T.C. at 398.

We conclude that petitioners have not met their burden of proving that a trust relationship existed.  Petitioners have offered only their self-serving testimony and a single check notation reading "Start-Up 13th Street".  In contrast

---

[5]Petitioners concede that Phoenix paid itself $66,798 from the 3396 account but did not include the payment in its gross receipts.

**[\*12]** the record shows that the 3396 account was opened under Phoenix' name and was not designated as a trust account and that Ronald and Andrew had sole signature authority over it. The check notation states only the general purpose of the payment; it does not impose any limitations on Phoenix' right to use the money or indicate the creation of a trust. Although Ronald testified that each transaction from the 3396 account was telephonically approved by Ms. Beckman, we find this claim implausible and not credible. Petitioners drew from the 3396 account to pay expenses clearly unrelated to the 13th Street Project, such as the purchase of race car parts and payment of Phoenix' shop rent, thus demonstrating that Phoenix could and, in fact, did use the funds purportedly held in trust for its own benefit and/or for the benefit of its shareholders. Additionally, despite failing to include the money in the 3396 account in its income, Phoenix nonetheless claimed deductions for expenses paid from that account. Accordingly, we sustain respondent's determination that the entire $250,000 payment from Elite was income to Phoenix in 2013.

III.    Phoenix' Disallowed Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he is entitled to any claimed deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The taxpayer must maintain records to

**[*13]** adequately substantiate the nature, amount, and purpose of a claimed deduction.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

A.    Car Racing Expenses

Respondent disallowed claimed deductions of $121,903 for amounts paid to acquire the 68 Camaro and its parts.  Petitioners present three alternative arguments:  (1) the racing expenses are ordinary and necessary advertising expenses of Phoenix; (2) Phoenix purchased the race car as an investment; and (3) the racing activity was a separate business, distinct from Phoenix, that was engaged in for profit.

Section 162(a) allows a taxpayer to deduct the ordinary and necessary expenses paid or incurred in carrying on a trade or business.  See also Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971).  Whether an expense is deductible under section 162 is essentially a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  An expense is ordinary if it is normal, usual, or customary within a particular trade or business, and it is necessary if it is appropriate and helpful for the development of the business. Welch v. Helvering, 290 U.S. at 113-114.  Additionally, to satisfy the "ordinary" requirement, there must be a proximate--rather than remote--relationship between the reported expense and the operation of the taxpayer's business.  Deputy v.

[*14] du Pont, 308 U.S. 488, 495-496 (1940); Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 660 (1962). To establish that the racing expenses were proximately related to its business, petitioners must show that Phoenix' sponsorship was reasonably calculated to advertise its business. See, e.g., Schulz v. Commissioner, 16 T.C. 401, 407 (1951). An expense that is primarily motivated by personal gratification is not deductible under section 162. Henry v. Commissioner, 36 T.C. 879, 884 (1961). The reported advertising expenses cannot be "merely a thin cloak for the pursuit of a hobby" by Andrew. Rodgers Dairy Co. v. Commissioner, 14 T.C. 66, 73 (1950).

Petitioners have not met their burden of proving that the expenses were ordinary and necessary advertising expenses of Phoenix. All of Andrew's racing activity was conducted under the name "Berry Racing", not Phoenix Construction & Remodeling. Although petitioners testified that the 68 Camaro featured advertising for Phoenix and that they met business contacts at the racetracks, no company logo or wordmark is visible in the only photograph of the car in the record,[6] and the record lacks any credible evidence that those contacts led to any

---

[6]The photograph was a side view of the car taken at a race Andrew won in May 2014. Petitioners first testified that there was a Phoenix sticker on the side of the car but, after viewing the photograph, claimed the sticker was on the car's rear window.

[*15] business for Phoenix.  Phoenix itself did not treat the car racing expenses as advertising expenses on its 2013 return but, rather, buried the car racing expenses among its many construction expenses.[7]  Petitioners have not demonstrated that the expenses were either ordinary or necessary to Phoenix.

Petitioners' alternative arguments, that the racing activity was a for-profit business separate from Phoenix and that the race car was an investment of Phoenix, are equally unavailing.  Petitioners admit that the 68 Camaro was not raced or ready for racing until 2014.  Expenses paid in 2013 with respect to the 68 Camaro would be deductible, if at all, through depreciation or as startup expenses under section 709 (applicable to partnerships) or section 195.  If the expenses were properly classified as startup expenses, they would become deductible only for the year in which the business actually began, and the amount of the deduction would be limited to no more than $5,000.  See secs. 709(b)(1)(A), 195(b)(1)(A).  If the 68 Camaro were a depreciable asset, the cost of acquiring the race car and getting it ready for racing would constitute an acquisition cost that is not currently deductible.  See sec. 1.263(a)-2T(d), (k), Temporary Income Tax Regs., 76 Fed.

---

[7]Petitioners did not keep adequate books for tax purposes in 2013, but the placement of the car racing expenses on the 2013 return does not appear to us to be the result of deficient recordkeeping.  Phoenix did report advertising expenses separately from its other business deductions, but the amount claimed was only $248.

[*16] Reg. 81102, 81107 (Dec. 27, 2011). A capital asset that is used in an activity for profit may be depreciated beginning for the tax year in which the asset was placed in service. Sec. 1.167(a)-10(b), Income Tax Regs. Property is placed in service when it is "first placed in a condition or state of readiness and availability for a specifically assigned function". Sec. 1.167(a)-11(e)(1), Income Tax Regs. The 68 Camaro was not raced or ready for racing in 2013, and petitioners did not sell the car or any of its parts in 2013, so their ill-conceived alternative arguments must be rejected.

We sustain respondent's adjustments disallowing Phoenix' deduction of the car racing expenses.

B.    Car and Truck Expenses

Respondent disallowed claimed deductions of $19,054 for car and truck expenses. These expenses include repair and maintenance costs for passenger vehicles and fuel costs for both passenger vehicles and construction equipment. Petitioners argue Phoenix' bank statements and QuickBooks records substantiate the reported expenses.

Generally, a taxpayer must maintain adequate records to substantiate his entitlement to any claimed deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; sec. 1.6001-1(a), Income Tax Regs. If a taxpayer establishes that he is

[*17] entitled to some deduction but fails to establish the full amount claimed, the Court may estimate the amount of allowable deduction to the best of its ability, bearing heavily on the taxpayer that failed to keep adequate records. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court may make such an estimate only if there is a reasonable basis in the record to support that estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Absent such a basis, any allowance would amount to "unguided largesse." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The Court cannot apply the Cohan rule to estimate expenses subject to the strict substantiation requirements of section 274(d). Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d)(4) provides that no deduction is allowed with respect to certain "listed property" (as defined in section 280F(d)(4)) unless the taxpayer substantiates by adequate records or sufficient evidence corroborating the taxpayer's own statement the: (1) amount, (2) date, and (3) business purpose of the expense. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016. As relevant here, section 280F(d)(4) defines listed property as any passenger automobile or other property used as a means of transportation. See also sec. 1.274-5(k)(7), Income Tax Regs. To satisfy the adequate records requirement, the taxpayer must

[*18] maintain documentary evidence of the expenses, such as receipts, and a contemporaneous logbook or similar record. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017. In the absence of such records, a taxpayer may establish the amount, date, or business purpose "[b]y his own statement, whether written or oral, containing specific information in detail as to such element" and by "other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020.

Petitioners have not satisfied the strict substantiation requirements of section 274(d) with respect to the use of their passenger vehicles. Phoenix' bank statements and QuickBooks entries establish the amounts and dates of the reported expenses, but they do not establish a business purpose. Petitioners did not maintain any logbooks or similar records recording the use of their passenger vehicles. Although petitioners testified that their passenger vehicles were used exclusively for business, they used the vehicles both to commute from their residences to Phoenix' worksites and to travel between worksites. While a taxpayer's cost of travel between work locations is generally deductible under section 162(a), his cost of commuting from his home to his place of business is not. Secs. 1.262-1(b)(5), 1.162-2(e), Income Tax Regs. Further, petitioners did

**[*19]** not introduce any credible evidence to corroborate their testimony with respect to the business purpose of the expenses.

With respect to the expense deductions that do not require strict substantiation and may be estimated under Cohan, we conclude petitioners have not provided a reasonable basis for the Court to estimate the allowable deductions to which Phoenix might otherwise have been entitled.  Petitioners did not introduce any credible evidence regarding the construction equipment Phoenix owned or used in 2013, nor have they proven how much fuel the equipment required.  Although we find credible petitioners' testimony that some of the gasoline purchases were for use in equipment, the record before us is insufficient to make a reasonable estimate of the amount.  Accordingly, we sustain respondent's determination.

C.    Rent Expenses

Respondent disallowed claimed deductions of $9,072 for the rental of a warehouse space in Atascadero, California.  Respondent determined the rent expenses were not ordinary and necessary business expenses because the warehouse was not used for Phoenix' construction business but, rather, as a workshop for the 68 Camaro.  Petitioners argue that the expenses are ordinary and

[*20] necessary because Phoenix used the space as an office and for the storage of construction equipment.

Petitioners have not demonstrated that the rent expenses were ordinary and necessary. Petitioners introduced seven checks into evidence, several of which bear a notation of either "shop" or "shop rent", to prove that Phoenix made monthly rent payments of $750. The record is clear that petitioners paid for use of the warehouse, but the notations belie petitioners' contention that the space was used in Phoenix' business either as an office or for storage. We sustain respondent's determination.

## IV. Ronald's Schedule C Deductions

Phoenix paid Ronald $12,000 for construction services he rendered in 2013. Ronald and Linda did not report the $12,000 as wages but as income from a sole proprietorship and claimed various Schedule C deductions, which respondent disallowed. Respondent argues that Ronald did not have a valid Schedule C trade or business and that, even if he did, he has not provided adequate substantiation for his reported expenses. Ronald argues that he operated a sole proprietorship, distinct from Phoenix, and is entitled to Schedule C deductions.

Ronald has not established by a preponderance of credible evidence that he had a valid Schedule C trade or business. Although Ronald characterized himself

[*21] as an independent consultant, Phoenix characterized its payment to him as officer compensation. Moreover, Ronald has not shown how the service he rendered to Phoenix as a consultant is different from the service he provided as an officer-employee. Further, even if Ronald had a valid Schedule C business, he has not provided adequate substantiation for the claimed deductions.[8] Accordingly, we sustain respondent's determination disallowing Ronald's Schedule C deductions.

V.    Section 6662(a) Accuracy-Related Penalties

Respondent determined petitioners were liable for accuracy-related penalties pursuant to section 6662(a) and (b)(1) and (2) for negligence and substantial understatements of income tax.

The Commissioner bears the burden of production with respect to a taxpayer's liability for an accuracy-related penalty and must provide evidence to indicate it is appropriate to impose the asserted penalty. Sec. 7491(c); Higbee v.

---

[8]Ronald did not apportion the telephone expenses between business and personal use, and we do not find credible his testimony that both his and Linda's cell phones were used exclusively for the purported Schedule C business. Neither Ronald nor Linda maintained a logbook recording the business use of their personal vehicles. Finally, Ronald has not introduced any credible evidence to prove that a portion of his home was regularly and exclusively used as a home office, and he did not apportion any of the household expenses he submitted between business and personal use. See sec. 280A(c)(1).

[*22] Commissioner, 116 T.C. at 446. As part of his initial burden of production, the Commissioner must produce evidence of compliance with the procedural requirements of section 6751(b). Clay v. Commissioner, 152 T.C. 223, 246 (2019), aff'd, ___ F.3d ___, 2021 WL 968621 (11th Cir. Mar. 16, 2021); Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Section 6751(b)(1) requires the initial determination of a penalty assessment to be "personally approved (in writing) by the immediate supervisor of the individual making such determination". The initial determination "is embodied in the document by which the Examination Division formally notifies the taxpayer, in writing, that it has completed its work and made an unequivocal decision to assert penalties." Belair Woods, LLC v. Commissioner, 154 T.C. 1, 15 (2020); see also Clay v. Commissioner, 152 T.C. at 249.

Petitioners' penalties were initially determined and communicated to petitioners in writing by the 30-day letters and RARs sent by respondent on April 11, 2016. The 30-day letters bore the electronic signature of RA Chavez' supervisor, Mr. Krovious. However, respondent conceded in the stipulation of facts that the penalties were not in fact approved until Mr. Krovious signed the civil penalty approval forms on May 6, 2016, nearly a month later.

[*23] Despite this prior concession and without asking to be relieved of the concession in the stipulation of facts, respondent argues on brief that the electronic signatures on the 30-day letters are sufficient to show procedural compliance with section 6751(b). A stipulation of fact is a conclusive admission by the parties, and such admissions are binding. Rule 91(e). The Court will not permit a party to a stipulation to qualify, change, or contradict that stipulation except where justice requires. Id. Respondent has not asked to be relieved of the stipulation nor has he presented grounds that he should not be bound by it. See, e.g., Said v. Commissioner, T.C. Memo. 2003-148, aff'd, 112 F. App'x 608 (9th Cir. 2004). Accordingly, we conclude that the penalties were approved by Mr. Krovious on May 6, 2016. Because the managerial approval did not occur until after the penalties were initially determined and communicated to petitioners, respondent cannot meet his burden of production. Petitioners, therefore, are not liable for the accuracy-related penalties.

We have considered the parties' other arguments and, to the extent they are not discussed herein, find them to be irrelevant, moot, or without merit.

Decisions will be entered under

Rule 155.